UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER ANIADES,<br><br>                              Plaintiff,<br><br>     -against-<br><br>NEW YORK STATE DIVISION OF PAROLE,<br>THE CITY OF NEW YORK DEPARTMENT OF<br>CORRECTIONS, PAROLE OFFICER<br>ELIZABETH JOHNSON, JOHN DOE 1-10,<br><br>                              Defendants. | No. 21 Civ. 5975 (CM) |

**DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

McMahon, J.:

        Plaintiff Christopher Aniades ("Aniades"), by counsel, brings this action under 42

U.S.C. § 1983 and state law against Defendants New York State Department of Corrections and

Community Supervision ("DOCCS," sued incorrectly as "New York State Division of Parole"),

the City of New York (substituted for the New York City Department of Corrections

("NYCDOC")), Parole Revocation Specialist Katarzyna Lis-Johnson ("Lis-Johnson," sued

incorrectly as "Parole Officer Elizabeth Johnson"), and John Does 1-10.[1]

---

[1] It is far from clear how many John Doe defendants there are. In his complaint, Plaintiff
alternately refers to "John Doe 1-10" as a single defendant and as multiple defendants. For
example, at certain points in his complaint, he says "John Doe 1-10 was a supervisor . . . ." and
describes the allegations against "John Doe 1-10" as against an individual officer. (Compl. ¶¶
25–26, 53–61, 68–72). However, Plaintiff also states that he is "presently ignorant" of the names
of individual officers who violated his rights and wished to name them, collectively as "John

Plaintiff alleges several Section 1983 claims and common law negligence claims against the Defendants. Relevant to this decision, he asserts a Section 1983 claim for inhumane condition of confinement in violation of the Fourteenth Amendment, as well as a common law negligence claim, against Defendant DOCCS. He also asserts a Section 1983 claim for cruel and unusual punishment in violation of the Eighth Amendment or for defamation against Defendant Lis-Johnson, a DOCCS employee.

The various defendants have moved to dismiss the complaint. DOCCS' motion must be granted because the claims asserted against it are barred by sovereign immunity. Lis-Johnson's motion must be granted because Plaintiff has failed to plead sufficient facts showing that Lis-Johnson was involved in a constitutional violation or that any alleged misconduct rises to the level of a constitutional violation.

## BACKGROUND

### I.  Factual Background

In 1982, Plaintiff was convicted of the rape and murder of a young woman in Queens. *See People v. Aniades*, 503 N.Y.S.2d 873, 874 (1986). He has been on parole since his release from state prison nearly a decade ago. (Compl. ¶ 8; Dkt. No. 48).

Sometime before August 2, 2019, Plaintiff violated the terms of his parole by failing to return home by his curfew; he claims that he fell asleep at a friend's house while watching a movie. (*Id.* ¶ 10). Plaintiff reported to his parole officer, Defendant Lis-Johnson, who informed him that he was going to be taken into custody pending a hearing on the alleged parole violation.

---

Doe 1-10". (*Id.* ¶ 7).  This is but one of many problems in what is a very poorly pleaded complaint.

2

(*Id.* ¶ 11). She allegedly told Plaintiff it was "her specific duty" to inform NYCDOC's personnel of the basis of his alleged parole violation (*Id.*).

Plaintiff was taken into custody by NYCDOC on August 2, 2019, (*Id.* ¶ 8), and was housed at Rikers Island. (*Id.* ¶ 22).[2] The publicly available NYCDOC Inmate Lookup Service

---

[2] As this court previously explained in *Roberson v. Cuomo*, 524 F. Supp. 3d 196, 198–201 (S.D.N.Y. 2021), vacated and remanded sub nom. *Roberson v. Hochul*, No. 21-877, 2022 WL 19224518 (2d Cir. Sept. 27, 2022), parole is an alternative method by which a prisoner may complete his or her sentence. Admission to parole does not terminate a prisoner's sentence; "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Morrissey v. Brewer*, 408 U.S. 471, 477, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

Not every violation of parole results in revocation. Before a decision is made to issue a parole violation warrant, DOCCS evaluates the alleged parole violation and makes an assessment of the risk to the community posed by the parolee's release. Pursuant to Executive Law § 259-i(3), if a parole officer has probable cause to believe that a parolee has violated the terms and conditions of parole, a warrant may (not must) be issued for initial detention in accordance with the rules of the Parole Board.

The New York Executive Law and the New York Code of Rules and Regulations require that notice of the charged violation be given to the parolee within three days of initial detention. Unless the parolee has been convicted of a new crime, he has the right to a preliminary hearing before a hearing officer who has had no prior supervisory involvement over the alleged violator. That preliminary hearing must take place within 15 days following execution of the parole warrant. At the preliminary hearing, if the hearing officer finds that there is no probable cause to believe the parolee violated one or more conditions of release "in an important respect," the officer must dismiss the violation charges and release the parolee back to supervision. If the hearing officer finds that there is probable cause to find that the alleged violator has violated one or more of the conditions of parole in an important respect (or the parolee waives the right to a preliminary hearing) she "shall direct that the alleged violator be held for further action." 9 N.Y.C.R.R. § 8005.7(a)(5). If there is a finding of probable cause – either by determination at the preliminary hearing or the parolee's waiver of the right to a preliminary hearing – a final revocation hearing is scheduled to occur within 90 days. The Board will only order a final revocation hearing for a parolee after a finding of probable cause if the parolee is in custody or has absconded. See 9 N.Y.C.R.R. § 8004.3(d)(1).

Read together, these regulations mandate detention for all parolees awaiting a final revocation hearing. Why the hearing officer would find that what appears to be a minor curfew violation was a violation of the terms of Plaintiff's parole "in an important request" is unclear. But the

database did not initially mention anything about a rape, but Plaintiff alleges that, on or about

September 1, 2019, unknown NYCDOC Officers (John Does 1-10) caused the database to report

that Plaintiff was being held on a charge of attempted rape in the first degree. (*Id.* ¶¶ 12–13).

Plaintiff alleges, albeit solely on information and belief, that John Does 1-10, either on their own

or in collaboration with Defendant Lis-Johnson (he does not know which), made up the

allegation that Plaintiff had tried to rape someone and recorded that false allegation in the

database. (*Id.* ¶¶ 13–14). Plaintiff alleges that Defendant Lis-Johnson told NYCDOC that

Plaintiff had committed the crime of attempted rape, (*Id.* ¶ 14); the sole basis for his belief is her

comment that she had a "specific duty" to inform NYCDOC of the charge against him. (*Id.* ¶¶

11, 17). Plaintiff alleges that he was never suspected of or charged with attempted rape. (*Id.* ¶

15).

On September 7, 2019, Plaintiff was told by a Rikers Island correction officer that that

day's edition of the *New York Post* was circulating in the jail, and that it included an article

headlined, "Convicted Rapist Killer Strikes Again in NYC After Getting Out of Jail." (*Id.* at ¶¶

22, 35). The article stated that Plaintiff, referred to as "Christopher 'Crazy Chris' Aniades," was

being held at Rikers on a charge of first-degree attempted rape. (*Id.* ¶¶ 22–23). Plaintiff believes

that the *Post* relied on the false information about the charge against him in the NYCDOC

database in writing the article. (*Id.* ¶ 24).[3]

_____

regulations do explain why the Plaintiff was arrested and held for such a long period of time on
such a trivial violation.

[3] Plaintiff pleads alternately that the *New York Post* relied upon false information on DOCCS'
website and false information on NYCDOC's website. (*Compare* Compl. ¶ 24 *with* ¶ 48). He
also mistakenly identifies the DOCCS website as the NYCDOC website. (Compl. ¶ 20 n.3).
However, attached to the complaint are screenshots of the webpage on which the *Post* is alleged
to have relied, and those screenshots are of pages from the publicly available NYCDOC database

Plaintiff avers that it is NYCDOC policy to limit the prison population's access to inflammatory stories about vulnerable inmates, due to the great risk of potential physical harm. (*Id.* ¶ 34). Plaintiff alleges that John Does 1-10 were aware that the *Post* article contained false information but nonetheless allowed the newspaper to circulate through the jail and took no steps to protect him from violence by other prisoners. (*Id.* ¶¶ 25–26, 33). Plaintiff further alleges that Defendant Lis-Johnson conspired with John Does 1-10 to spread "information through the prison that would guarantee [Plaintiff] substantial risk of harm," (*Id.* ¶ 27), though he offers no factual support for this purely conclusory allegation. He also alleges that neither Lis-Johnson nor her employer (DOCCS) notified the *Post* that the information in the NYCDOC database was incorrect. (*Id.* ¶ 29). Upon information and belief, he alleges the false accusation was reproduced by at least seven other media outlets and seen by millions. (*Id.* ¶ 30).

When inflammatory information about an inmate is accidentally allowed to circulate among the prison population, Plaintiff alleges that NYCDOC policy requires the inmate to be placed into protective custody immediately. (*Id.* ¶ 34). However, Plaintiff asserts that he was not placed in protective custody and transferred to the Manhattan Detention Complex (MDC) until September 9, two days after the *Post* article appeared. (*Id.* ¶ 36).  Plaintiff alleges that he was intentionally kept in the general population for the extra 48 hours by the John Doe Officers and/or Lis-Johnson so that he would suffer bodily harm at the hands of other inmates. (*Id.*). On the day he was moved, he alleges that the NYCDOC correction officer overseeing his transfer stated, "I'm surprised you made it," which Plaintiff understood to mean that he was deliberately

---

webpage. It thus appears that Plaintiff is alleging that the unknown NYCDOC officers entered false information into the *NYCDOC* database and that the *New York Post* relied on the false information on the *NYCDOC* website. This makes sense, since Plaintiff alleges no reason to assume that NYCDOC officers could access and alter the DOCCS website.

being held in an area accessible to other prisoners who might have read the story, and that he faced significant danger while he was awaiting transfer. (*Id.* ¶ 38). Plaintiff does not allege that he suffered any harm at the hands of anyone.

Plaintiff was released on November 4, 2019. (*Id.* ¶ 39). By some unknown date but no later than mid-November 2019, unknown NYCDOC officers corrected the error in the database, so it stated that Plaintiff had been held for a violation of parole – not for attempted rape. (*Id.* ¶¶ 19–20).

Plaintiff asserts the false statement on the web site has caused him to suffer shame, public humiliation, loss of reputation, loss of personal belongings, emotional distress, severe pain and suffering and threats against his life. (*Id.* ¶¶ 21, 30). During his incarceration at Rikers, Plaintiff avers he was in severe emotional distress, out of fear he would be targeted by other prisoners (though he was apparently not so targeted). (*Id.* ¶ 37). Despite the correction of the *Post* article, he claims that the false report caused his family to reject him and his brother, with whom he had recently reconciled, to sever his relationship with Plaintiff. (*Id.* ¶¶ 21, 42). He also claims that the story has harmed his church, its staff, and their reputations and alleges that all of his personal belongings were destroyed because "public housing unit administrators believed, based on the libelous report, that Mr. Aniades would never be released from prison and thus threw away or destroyed his belongings." (*Id.* at ¶¶ 41–42).

## II.   Procedural Posture

Plaintiff filed the original complaint commencing this action on July 13, 2021. (Dkt. No. 1). In his original complaint, Plaintiff brought various constitutional and common law claims against "New York State Parole," NYCDOC, Parole Officer "Elizabeth Johnson," and John Doe

6

1-10. He also brought claims for libel and unjust enrichment against the *New York Post* and News Corp.

On December 1, 2021, Plaintiff moved for an extension of time to serve the defendants named in the complaint. The 120-day period for service of process pursuant to Fed. R. Civ. P. 4(m) had already expired, and in his application for an extension, Plaintiff's counsel admitted to inadvertence, neglect, and mistake by failing to check on service of the complaint. (Dkt. No. 11) As the statute of limitations was not due to run on most of the claims asserted until April 25, 2023,[4] the court granted him an extension to effect service by February 15, 2022. This order was entered on January 13, 2022, (Dkt. No. 12).

Plaintiff did not meet the deadline, and on July 26, 2022 (nearly six months after his deadline to serve, but still before the statute of limitations expired), Plaintiff moved for a second extension of time to serve. (Dkt. No. 13). Plaintiff's counsel justified his request by stating that he had not received notice of the court's original ruling granting him an extension – not a particularly credible allegation, since the ruling was posted on ECF on the day it was handed down. (Dkt. No. 12). However, the court granted another extension, this time until August 7, 2022. (Dkt. No. 14).

On August 5, 2022, Plaintiff moved for what the court interpreted to be permission to use substituted service, because DOCCS counsel refused to accept service of the complaint for the

---

[4] The longest statutes of limitations applicable to any of Plaintiff's claims is the three year period for bringing claims under Section 1983 and negligence. All acts giving rise to Plaintiff's claims occurred prior to his transfer to the safety of protective custody on September 9, 2019. Ordinarily the statute would run on September 8, 2022. However, because of Governor Cuomo's 228 tolling of the statute of limitations during the COVID crisis – a tolling applied to this court in connection with Section 1983 claims – the statute actually was due to run on April 25, 2023. This will be discussed later in connection with any potential amendment to Plaintiff's complaint.

"New York State Division of Parole." The court granted this motion on August 17, 2022.  (Dkt. Nos. 15–16).

Returns of service on the docket indicate that the City was served on August 2, 2022; and that Officer Lis-Johnson was served on August 4, 2022. (Dkt. Nos. 17–18). The *Post* and Newscorp were served on August 4, 2022. (Dkt. Nos. 19–20).  Plaintiff never filed a return of service for DOCCS but counsel for DOCCS appeared nonetheless and moved to dismiss the complaint on September 13, 2022. (Dkt. No. 24).

Plaintiff sought certificates of default against Defendants NYCDOC, Lis-Johnson, the *New York Post*, and Newscorp from the Clerk of Court on September 12, 2022, and, after those filings proved deficient, again on September 16, 2022 (Dkt. Nos. 21–23, 26, 28, 30).  On September 20, the Clerk of the Court certified defaults against NYCDOC, the *New York Post*, and Newscorp, but not Lis-Johnson. (Dkt. Nos. 36–37). On September 27, 2022, counsel for the *New York Post* and Newscorp entered appearances, (Dkt. Nos. 39–40), and on September 30, 2022, Lis-Johnson, by agency counsel, moved to dismiss the claims against her. (Dkt. No. 41). On October 6, 2022, the New York City Law Department moved to set aside the clerk's certificate of default against NYCDOC because NYCDOC is not a suable entity and the New York City Law department had not become aware of the lawsuit until after the entry of default. (Dkt. No. 46). On October 11, 2022, the court ordered the Clerk of the Court to vacate the certificate of default against NYCDOC and to substitute the City of New York for NYCDOC as the party defendant. (Dkt. No. 49).

Plaintiff filed his one as of right amended complaint on October 7, 2022. In this complaint he dropped his claims against the *New York Post* and Newscorp,[5] leaving the City, DOCCS, Lis-Johnson, and NYCDOC John Does 1-10 as the remaining defendants. (Dkt. No. 48).

On October 19, 2022, Defendants DOCCS and Lis-Johnson moved to dismiss the claims asserted against them in the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim). (Dkt. No. 51). DOCCS moved on the ground that the Eleventh Amendment barred the maintenance of the claims against it in federal court. Lis-Johnson argued that the complaint failed plausibly to allege that she was personally involved in any constitutional violation and that the complaint failed to state a claim for any violation of Plaintiff's Eighth Amendment rights. (Dkt. No. 40 at 1–2).

On November 22, 2022, counsel for DOCCS and Lis-Johnson informed the court that Plaintiff had failed to file any opposition to the motion, in violation of Local Civil Rule 6.1. (Dkt. No. 55). It wasn't until November 30, 2022, that Plaintiff filed a motion for extension of time to respond, asking this court to consider his attached opposition. His explanation for delay, chock full of misstatements about the record, effectively amounts to lawyer error – the same excuse used to justify his repeated prior transgressions of the rules. (Dkt. No. 56). Disregarding Plaintiff's counsel's many, many errors, the court granted the extension and accepted his

---

[5] The *Post* appears to have since updated its article on the Plaintiff, the subject of which is now the false accusation of attempted rape. *See* Brad Hamilton and Kenneth Garger, *DOC falsely accuses convicted rapist of another crime*, N.Y. Post, September 7, 2019, https://nypost.com/2019/09/07/doc-falsely-accuses-convicted-rapist-of-another-crime/ (last visited June 27, 2023). In exchange for this correction, Plaintiff seems to have agreed to drop any claims for damages against the *Post* and Newscorp (a good deal for Plaintiff considering he could not plausibly allege a claim for unjust enrichment against them and the statute of limitations on his libel claim had run before he filed his original complaint).

memorandum. (Dkt. No. 57). The City filed its answer to his complaint on December 20, 2022, (Dkt. No. 59), the last filing made in this case.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]ll reasonable inferences should be drawn in favor of the plaintiff," but the "complaint must contain sufficient allegations to nudge a claim 'across the line from conceivable to plausible.'" *Sphere Digital, LLC v. Armstrong*, No. 20-cv-4313 (CM), 2020 WL 6064156, at *4 (S.D.N.Y. Oct. 14, 2020) (quoting *Twombly*, 550 U.S. at 555). Where a plaintiff fails to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Federal Rule 12(b)(6) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the truth of the allegations. *Id*. at 545.

## DISCUSSION

I.  **DOCCS' Motion to Dismiss the Claims Asserted Against It On The Ground that This Court Lacks Subject Matter Jurisdiction Over Them Is Granted**

This court lacks subject matter jurisdiction over the claims asserted against DOCCS, because the doctrine of sovereign immunity bars the trial of claims asserted against the State of

10

New York (even in the person of one of its agencies) absent the State's consent – which, as to the claims in this case, has not been given.

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* Congress did not abrogate states' sovereign immunity when it enacted 42 U.S.C. § 1983, *Quern v. Jordan*, 440 U.S. 332, 342 (1979), and New York has not waived its Eleventh Amendment immunity to federal suit. *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38–39 (2d Cir. 1977). Therefore, DOCCS, as an arm of the State of New York, may not be sued pursuant to Section 1983.

Nor can this court take cognizance of Plaintiff's negligence claim against DOCCS. While the State of New York has waived its immunity from liability for certain claims arising under state law, those claims may only be brought in the New York Court of Claims. *Gollomp*, 568 F.3d at 357 n.2 (citing N.Y. Const. Art. VI, § 9, and N.Y. Court of Claims Act § 8).

Mystifyingly, Plaintiff argues that his claims are not barred by sovereign immunity because DOCCS can be held liable for Lis-Johnson's conduct under the doctrine of *respondeat superior*. (Opp. at 8–9; Dkt. No. 56). This is errant nonsense. The doctrine of *respondeat superior* is not a waiver of sovereign immunity and does not circumvent the requirement that New York expressly waive immunity from suit for claims asserted on the basis of that theory. Even more fundamental, there is no *respondeat superior* liability under Section 1983, so even if immunity had been waived the state could not be held liable on that theory for constitutional

violations committed by Lis-Johnson. *Jackson v. Annucci*, 2021 WL 2581340, at *5 (S.D.N.Y.

June 23, 2021) (quoting *Jamison v. Fischer*, 2012 WL 4767173, at *4 (S.D.N.Y. Sept. 27, 2012).

Any minimally competent lawyer who brings Section 1983 claims in this court should know this.

     All claims against DOCCS are, therefore, dismissed. The Section 1983 claim is dismissed

with prejudice. As this court lacks subject matter jurisdiction over the negligence claim I can

only dismiss it without prejudice. But since it is plainly time-barred, *see supra* p.6 n.4, any effort

by Plaintiff to bring the claim in the New York Court of Claims would be futile.


### II.    Lis Johnson's Motion to Dismiss for Failure to State a Claim is Granted

     Plaintiff asserts a Section 1983 claim for an "Eighth Amendment" violation against

Defendant Lis-Johnson. The complaint does not specify how Lis-Johnson violated his Eight

Amendment rights. Read most charitably to Plaintiff, he pleads that Lis-Johnson, a parole officer

employed by DOCCS, told unknown individuals at NYCDOC that Plaintiff violated his parole

by attempting to rape someone. (Compl. at ¶¶ 45–46). Plaintiff asserts that this lie resulted in

"cruel and unusual punishment," because (1) someone at Rikers put that erroneous information

into a publicly-available database; (2) the *New York Post* picked up this information and

published a story on September 7, 2019, alleging that Plaintiff had been re-incarcerated for

attempted rape; and (3) he was exposed to mortal jeopardy at Rikers for two days after the *Post*

article appeared because the article was allowed to circulate among the general population but

Plaintiff was not immediately removed from the general population and placed into protective

custody. (*Id.* at 49–50). This does not plausibly allege any violation of Plaintiff's Eighth

Amendment rights by Lis-Johnson. Liberally construing Plaintiff's complaint, his allegations

also do not satisfy the requirements to state a "stigma plus" due process claim against Lis-Johnson.

### A.      Eighth Amendment Claim

Defendant Lis-Johnson cannot be held liable for any conditions at Rikers that may have violated Plaintiff's Eighth Amendment rights because she is an employee of DOCCS, not NYCDOC, and the alleged conditions of confinement that Plaintiff assigns as cruel and unusual were perpetrated at Rikers Island by (unnamed) NYCDOC officers. The Eighth Amendment imposes an obligation on prison officials to guarantee the safety of prison inmates. *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994). However, that obligation is limited to inmates who are in their custody. *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994)). Rikers Island is a NYCDOC facility. Defendant Lis-Johnson is DOCCS official. While Plaintiff may have reported to Lis-Johnson over breaking curfew, and it was she who told him that she would report him for his parole violation, once arrested Plaintiff was at all times in the custody of NYCDOC. Plaintiff cannot maintain a Section 1983 action for an alleged Eighth Amendment violation against a state Corrections employee for harm allegedly suffered while he was in the custody of City Corrections.

Moreover, liability for a constitutional tort can only be imposed upon a defendant if the defendant personally "subjects, or causes to be subjected" any person to deprivation of any federal right. *Taylor v. Brentwood Union Free Sch. Dist.*, 143 F.3d 679, 686 (2d Cir.1998). Accordingly, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Williams v. Smith*, 781 F.2d 319, 323 (2d

Cir.1986) (quoting *McKinnon v. Patterson*, 568 F.2d 930. 934 (2d Cir.1977), *cert. denied*, 434

U.S. 1087(1978)); *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001).

Plaintiff alleges, in conclusory fashion and entirely on information and belief, that Lis

Johnson "conspired" with unknown NYCDOC officers to have the erroneous information about

the reason for his arrest inserted on the DOCCS web site, to have the *Post* article circulated

through the jail, and to delay for two days his transfer to protective custody. But he pleads not a

single fact tending to show that Lis Johnson had any contact with anyone at Rikers, let alone that

she was involved in some sort of conspiracy to doctor the publicly available database to show a

false reason for Plaintiff's arrest.

To prove conspiracy under § 1983, "a plaintiff must show: (1) an agreement between two

or more state actors or between a state actor and a private entity (2) to act in concert to inflict an

unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."

*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citation omitted). "[C]omplaints

containing only conclusory, vague, or general allegations that the defendants have engaged in a

conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and

expansive allegations are insufficient, unless amplified by specific instances of misconduct."

*Ciambrello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (internal citation and quotation

marks omitted). The facts alleged must constitute a "meeting of the minds" between defendants

to show a conspiracy. *Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003).

The complaint against Lis Johnson is properly dismissed under this well-settled rule. As a

state parole officer, she had no control over conditions at Rikers, so the only conceivable basis to

hold her liable for any Eighth Amendment violations that occurred there would be a theory of

conspiracy. But Plaintiff makes no allegation that she had the ability to alter information in the

database and no allegation of fact tending to show how she conspired with any individual who did have such access to insert the incorrect information into the database. Not a single fact is pleaded tending to show that Lis Johnson had any conversations about or control over the dissemination of information about the *Post* story among Rikers inmates or about the length of time it took to transfer Plaintiff into protective custody. His purely conclusory allegations that she was somehow involved in any of that are not "well pleaded" and do not afford a basis for moving forward with an Eighth Amendment claim against her.

In fact, Plaintiff does not even have any concrete basis to assert that Lis-Johnson told anyone at Rikers that he was being violated for an attempted rape, which is the one concrete thing Plaintiff accuses her of doing. Plaintiff speculates (on information and belief) that Lis-Johnson (must have) told someone at NYCDOC that he had violated his parole by trying to rape someone. But the only factual basis for that allegation is Lis-Johnson's statement that she had a duty to report "the charge against him." The charge against him was that he had violated his parole. (Compl. ¶ 11). The well pleaded facts in the complaint afford no basis for inferring that Lis-Johnson was involved in any effort to insert information about an alleged rape into the NYCDOC database. Plaintiff was taken into custody for the parole violation on or about August 2, 2019, so Lis Johnson obviously reported "the charge against him" prior to that date. But the database was not altered to reflect the attempted rape allegation – again, per Plaintiff's own pleading – until September 1, 2019, almost a month after Plaintiff was taken into custody and sent to Rikers. (Compl. ¶ 12). The only plausible inference from the pleaded facts is that Lis Johnson said nothing prior to Plaintiff's August 2 arrest about any attempted rape, because, prior to September 1, the NYCDOC database did not contain any such information. Otherwise, it would not have been "altered" on or about September 1 – a month or more after Lis Johnson

15

reported the parole violation – to include the uncharged act. Frankly, the more plausible inference from the pleaded facts (as opposed to Plaintiff's conjectures) is that someone at NYCDOC had a bee in his bonnet about Plaintiff, a convicted rapist and murderer, and set out to make trouble for him, without any help from Ms. Lis- Johnson whatever.

In his opposition papers, Plaintiff asserts that he need not show Lis-Johnson was personally involved in the violations of his Eighth Amendment rights because "where defendants act in concert with a principal wrongdoer" each is fully responsible. (Opp. at 5).[6] However, that is incorrect. In order to charge someone with participating in a conspiracy to violate someone's Eighth Amendment rights, a plaintiff must plausibly allege facts tending to show that the defendant in question — Lis-Johnson — was involved with others in some concerted action against him. There is simply no such allegation in the complaint. None.

Finally, Plaintiff cannot plead that Lis-Johnson participated in some violation of his Eighth Amendment rights because on the facts pleaded there was *no violation* of his Eighth Amendment rights.

The Eighth Amendment, which is applicable to the states via the Fourteenth Amendment's Due Process Clause, prohibits cruel and unusual punishment. The Supreme Court has held that "only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (internal quotation marks and citation omitted); *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000).

---

[6] Generally, concert of action is a theory of liability that holds liable all defendants who have contributed to a tortious act, not a constitutional violation. Indeed, all of the authorities that Plaintiff cites in support of this point are cases holding defendants liable for violent torts such as assault and physical harm, not violations of constitutional rights. (*Id.*).

Prison officials also must "take reasonable measures to guarantee the safety of ... inmates." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir.1996). In order to prevail in a challenge to prison conditions, an inmate must establish both an objective and a subjective element. *Farmer*, 511 U.S. at 834. Objectively, the prisoner must demonstrate that the conditions of his incarceration posed a substantial risk of serious harm. *Id.* The prisoner must also demonstrate that subjectively, the defendants acted with a "sufficient[ly] culpable state of mind." Id. That state of mind is one of deliberate indifference, in which a prison official "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes*, 84 F.3d at 620.

Regarding the objective prong, the focus of the Court's inquiry is "not the extent of the physical injuries sustained in an attack, but rather the existence of a 'substantial risk of serious harm.'" *Randle v. Alexander*, 960 F. Supp. 2d 457, 474 (S.D.N.Y. 2013) (quoting *Farmer*, 511 U.S. at 837). A substantial risk of serious injury is defined as "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Gilmore v. Rivera*, 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). The inmate must show that the risk of "actual and imminent" future harm is "so grave that it violates contemporary standards of decency." *Id.* (quoting *Benjamin v. Fraser*, 343 F.3d 35, 51 (2d Cir. 2003); *Braxton v. Nichols*, 2010 WL 1010001, at *11, (S.D.N.Y. Mar. 18, 2010)).

Plaintiff broadly alleges that Lis-Johnson acted with deliberate indifference to his safety when she: (1) falsely reported to NYCDOC that his parole violation was a violent sex crime instead of curfew violation, (2) which somehow caused a *New York Post* article repeating that allegation to circulate through Rikers Island, (3) failed to notify the *Post* that the allegation was

incorrect, and (4) delayed his removal from the general population of Rikers to protective custody by 48 hours. (Comp. ¶¶ 13–14, 27, 29).

No element of these allegations shows that Lis-Johnson acted with deliberate indifference to Plaintiff's safety.

First, the emotional distress that Plaintiff experienced while he waited to be removed to protective custody is not a sufficient harm to support a claim for an Eighth Amendment violation. Courts in this circuit have repeatedly held verbal harassment and isolated threats do not create "a harm of federal constitutional proportions." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 432 (S.D.N.Y. 2010) (citing cases). Plaintiff's fear that he might be assaulted, without more, is "not an objectively serious enough injury to support a claim for damages [under the Eighth Amendment]." *Bolton v. Goord*, 992 F. Supp. 604, 627 (S.D.N.Y. 1998).

Second, Plaintiff fails to allege any specific threats made and resulting harms suffered during the 48-hour period between the circulation of the *Post* article and his removal to protective custody that would support his claim that he was at a substantial risk of harm.

The mere existence of threats, unless accompanied by physical harm, is insufficient to plausibly allege that a plaintiff faced a substantial risk of serious harm. In *Green v. City of New York Dep't of Corr.,* 2008 WL 2485402, at *1 (S.D.N.Y. June 19, 2008), the plaintiff had been improperly designated as belonging to a gang in the prison database and, as a result, had been the target of various death threats by fellow inmates. The court held that the "mere existence of such threats, without any allegation that physical harm actually existed or was imminent . . ." did not suffice to plausibly allege that he was subject to a substantial risk of serious harm. *Id.* at 6; *see also Chalif v. Spitzer*, 2008 WL 1848650, *9 (N.D.N.Y. Apr. 23, 2008). Meanwhile, in *Njasang*

*Nji v. Heath*, 2013 WL 6250298, at *9 (S.D.N.Y. Dec. 2, 2013), the plaintiff claimed that one of the defendant prison officials had violated his Eighth Amendment right to be free from the threat of harm by starting an unfounded rumor that he had threatened a different prison official, putting him at risk of retaliation from the guards. This court held that plaintiff had failed to show that the official had put him at serious risk of harm because plaintiff did not allege that he had ever actually been threatened with harm or was actually harmed as a result of the rumor. *Id.* at 10.

The only two facts alleged that support Plaintiff's claim that he was at a risk of harm during this 48-hour period are (1) his awareness of NYCDOC's general policy that he should be move to protective custody to avoid potential conflicts with other inmates and (2) an alleged remark by an unknown NYCDOC official that Plaintiff interprets to mean that he was in danger (which Plaintiff heard only *after* he was removed from the general population at Rikers). Unlike the plaintiff in *Green*, Aniades can point to no specific threats from other inmates or even recent general violence against inmates who had been the subject of newspaper articles that had circulated the jail. Plaintiff's "purely speculative and hypothetical allegations are not a situation where the conduct [], 'rises to the level of a wanton act of cruelty such that the inmate is in fear of instant and unexpected death.'" *Nji*, 2013 WL 6250298, at *10 (S.D.N.Y. Dec. 2, 2013) (quoting *Green v. City of New York Dept. of Corrections*, 2008 WL 2485402, at *6–7 (S.D.N.Y. June 19, 2008)). Since he can point to no specific threat made, let alone any actual physical harm suffered, Plaintiff fails to set forth any plausible claim that he was at substantial risk of serious harm.

Nor has Plaintiff plead sufficient facts to establish the actual knowledge component of the subjective prong: he has not shown why Lis-Johnson knew or should have known that harm was likely to occur to Plaintiff. An official acts with deliberate indifference when she is "aware

of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ... draw[s] the inference." *Farmer*, 511 U.S. at 837. In other words, "[f]or a plaintiff to state a claim for deliberate indifference based on a failure to protect him, he must allege that corrections officers knew of and disregarded a particular risk to his safety." *Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) (citing *Zimmerman v. Macomber*, 2001 WL 946383, at *5 (S.D.N.Y. Aug. 21, 2001)). "The plaintiff must allege that the defendants knew of a prior altercation between the plaintiff and his attacker, or of threats that had been made against the plaintiff." *Id.* (citing *Fernandez v. N.Y.C. Dep't of Corr.*, 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010)). Actual knowledge is not satisfied by awareness of "general prison violence and sporadic verbal confrontations resulting in minor or no injuries. *Corley v. City of New York*, 2015 WL 5729985, at *13 (S.D.N.Y. Sept. 30, 2015) (citing *Melo v. Combes*, No. 97 Civ. 0204(JGK), 1998 WL 67667, at *5 (S.D.N.Y. Feb. 18, 1998)).

Plaintiff pleads not a single fact suggesting a specific risk or harm suffered during his 48-hour period in general population, such as a physical threat or his involvement in an altercation. Since Plaintiff does not allege any particular risk to his safety, he cannot plausibly allege that Lis-Johnson had any actual knowledge of a particular risk.

Plaintiff argues that Lis-Johnson should have been aware of the particular risk of harm because she knew the article about Plaintiff was circulating through Rikers. He alleges not a single fact from which one could infer that Lis-Johnson had any way of knowing what was or was not circulating at Rikers. Indeed, Plaintiff alleges no fact tending to show that Lis-Johnson knew of the *Post* story. However, even if he had so alleged, he pleads no facts suggesting that Lis-Johnson knew or should have known that the circulation of the *Post* article would place him in harm's way. In *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 358 (S.D.N.Y. 2010), the plaintiff

claimed that a defendant prison official had instigated his beating by another defendant prison official by provoking him into a verbal altercation. The court found that plaintiff had not plausibly alleged that the defendant knew of and disregarded the risk to the inmate, because he did not plead sufficient facts showing why the defendant should have known that a beating was likely to occur after a verbal altercation, such as knowledge of a pattern of physical beatings following verbal harassment. *Id.* Here, Plaintiff alleges no facts suggesting Lis-Johnson was aware that inmates who are the subject of newspaper articles are at greater risk of harm from fellow inmates. Indeed, the only fact plead that suggests such a risk exists is Plaintiff's reference to NYCDOC's policy of removing such inmates to protective custody. But Plaintiff does not plead any facts suggesting Lis-Johnson, a DOCCS official, was trained in or should have been aware of the NYCDOC policy. Plaintiff has not plausibly alleged Lis-Johnson had actual knowledge of any potential risk of harm because he states no facts suggesting she should have known its circulation through the jail would expose him to physical threat. Accordingly, he cannot state a claim for Eight Amendment deliberate indifference.

For all these reasons, Plaintiff's Eighth Amendment claim should be dismissed.

### B.   Stigma Plus Claim

Liberally construing Plaintiff's complaint, Plaintiff alternatively alleges that Lis-Johnson violated Section 1983 claim by defaming him. This theory, too, lacks the slightest merit.

Defamation, even when committed by a state official, is a matter of state law, and does not ordinarily rise to the level of a constitutional violation. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In limited circumstances, under the "stigma plus" doctrine, a plaintiff can assert a claim under Section 1983 defamation, but only if he pleads facts tending to show: (1) the utterance of a statement "sufficiently derogatory to injure his or her reputation, that

21

is capable of being proved false, and that he or she claims is false," followed by (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights. *Sadallah v. City of Utica*, 383 F.3d 34 (2d Cir. 2004). The state-imposed burden or alteration of status must be "in addition" to the derogatory statement (*i.e.*, the loss of reputation coupled with some deprivation of liberty or property interest). *Id.* "Thus, even where a plaintiff's allegations would be sufficient to demonstrate a government-imposed stigma, such defamation is not, absent more, a deprivation of a liberty or property interest protected by due process." *Id.* (citing *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)).

"A plaintiff establishes a 'plus' factor for purposes of the [] 'stigma plus' test only if he or she points to an indicium of material government involvement unique to the government's public role that distinguishes his or her claim from a traditional state-law defamation suit." *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 56 (2d Cir. 2001), rev'd sub nom. *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003). While "it is not entirely clear what the 'plus' is," Circuit precedent strongly suggests the "plus" requires the deprivation of some legal right or status. *Valmonte v. Bane*, 18 F.3d 992, 999–1000 (2d Cir. 1994) (quoting *Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir.1989)). Examples of a material state imposition on rights or status that courts have found support a "plus" claim include deprivation or termination of government employment, *Sadallah*, 383 F.3d at 38, loss of state provided hospital privileges at a state hospital, *Greenwood v. New York, Off. of Mental Health*, 163 F.3d 119, 122 (2d Cir. 1998), loss of right to purchase alcohol, *Wisconsin v. Constantineau*, 400 U.S. 433, 434, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), foreclosure to take advantage of government employment, *Board of Regents v. Roth*, 408 U.S. 564, 573–74, 92 S.Ct. 2701, 33 L.Ed.2d 548

(1972), and extinguishing the right to public education, *Goss v. Lopez*, 419 U.S. 565, 574–75, 95

S.Ct. 729, 42 L.Ed.2d 725 (1975).

However, "reputational damage resulting in the loss of private employment, humiliation,

and embarrassment are inadequate to satisfy the "plus" requirement." *Balentine v. Tremblay*, 554

F. App'x 58, 61 (2d Cir. 2014). Other "deleterious effects [flowing] directly from a sullied

reputation," standing alone, also do not constitute a "plus" under the "stigma plus" doctrine.

*Valmonte*, 18 F.3d at 1001. "These would normally include the impact that defamation might

have on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any

other typical consequence of a bad reputation." *Id.*

Here, even if Defendant Lis-Johnson did make a false statement regarding the allegation

against Plaintiff, and even if that statement did injure the reputation of this man who had already

been convicted of the most serious of crimes, the alleged state-imposed burden attributable to the

false allegation was (1) its entry into the database by someone other than Lis-Johnson; (2) which

led to the publication of  a story reporting the false information by the *New York Post*; (3) which

story allegedly made the rounds at Rikers, thereby subjecting Plaintiff to the possibility of danger

from the inmates; and (4) the state (in the person of NYCDOC) failed to remove him from that

danger for two days. The only state-imposed burden in that litany of "for want of a nail the

kingdom was lost" allegations is the last—the failure to get him into protective custody for two

days.

"[T]here exists a variety of interests which are difficult of definition but are nevertheless

comprehended within the meaning of either 'liberty' or 'property' as meant in the Due Process

Clause." *Paul v. Davis*, 424 U.S. 693, 710 (1976). "These interests attain this constitutional

status by virtue of the fact that they have been initially recognized and protected by state law,

and [the Supreme Court has] repeatedly ruled that the procedural guarantees of the Fourteenth

Amendment apply whenever the State seeks to remove or significantly alter that protected

status." *Id.* "Lawful incarceration brings about the necessary withdrawal or limitation of many

privileges and rights," and restricts only those deprivations falling outside "the expected

parameters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. 472, 485

(1995) (quoting *Jones*, 433 U.S., at 125, 97 S. Ct., at 2537) (internal quotations omitted). [7] In the

case of segregated confinement, the Second Circuit has stated that, unless the conditions of

confinement constitute atypical or significant hardships, "restrictive confinements of less than

101 days do not generally raise a liberty interest warranting due process protection, and thus

require proof of conditions more onerous than usual." *Davis v. Barrett*, 576 F.3d 129, 133 (2d

Cir. 2009) (citing *Colon v. Howard*, 215 F.3d 227, 231–32 & n. 5 (2d Cir. 2000)).

The *failure* to confine Plaintiff to protective custody for 48 hours manifestly implicates

no *liberty* interest and presents no atypical or significant hardship. Plaintiff's incarceration in the

general population of the jail necessarily exposed him to the same conditions as those usually

faced by inmates. Plaintiff can hardly say that his incarceration in the general population for two

days was outside the "regime . . .  to be normally expected" in a jail. *White v. Artuz*, 1996 WL

84498, at *2 (S.D.N.Y. Feb. 27, 1996) (alteration in original). Plaintiff also does not allege any

---

[7] Plaintiff is a convicted offender serving the remainder of his sentence as a parolee and was incarcerated at Rikers for a violation of parole. Accordingly, he must meet a demanding standard for asserting the deprivation of a liberty interest. "To show a liberty interest, convicted prisoners must satisfy a more stringent 'atypical and significant hardship' standard, as outlined in *Sandin*, whereas pretrial detainees need not meet such a standard because '[a] detainee's interest in freedom from unjustified infliction of pain and injury is more substantial.'" *Valdez v. City of New York*, 2013 WL 8642169, at *8 n.5 (S.D.N.Y. Sept. 3, 2013), report and recommendation adopted, 2014 WL 2767201 (S.D.N.Y. June 17, 2014) (quoting *Lewis v. Amato*, No. 12 Civ. 607, 2013 WL 3387078, at *8 (N.D.N.Y. July 8, 2013).

personal injury or other deprivation resulting from the failure to remove him to protective custody in this two day period, such that any "significant hardship" was imposed on him. *Id.*

Furthermore, New York has not created any liberty interest in being free from the general population. New York Corrections Law clearly leaves the decision to remove an inmate to protective custody to the discretion of prison officials:

> The superintendent of a correctional facility may keep any inmate confined in a cell or room, apart from accommodations provided for inmates who are participating in programs of the facility, for such period as may be necessary for the maintenance of order or discipline.

N.Y. Correction Law § 137(6). Since placement in protective custody is left to the discretion of officials, inmates have no entitlement to be placed in protective custody under New York law. *Cf. White*, 1996 WL 84498, at *2. Accordingly, since neither the Due Process clause nor New York state law creates a liberty interest in removal to protective custody, Plaintiff fails to plausibly allege the deprivation of a liberty interest needed to state a claim under stigma plus.

Plaintiff may argue that it was not the failure to immediately remove him to protective custody that deprived him of a liberty interest, but rather the danger he faced from his fellow inmates while he remained incarcerated in the general population of the jail. Some courts have recognized the deprivation of a liberty interest where a prisoner is given an improper administrative designation for an at-risk category, such as being labeled in the prison classification system as a gang member or sex offender, and he suffers a resulting loss of certain prison benefits and direct death threats from other inmates. *Green*, 2008 WL 2485402, at *5 (S.D.N.Y. June 19, 2008). But, as already mentioned, Plaintiff does not point to a single threat that was made against him by another inmate. Since Plaintiff fails to raise any facts suggesting

25

he was subjected to threats during the 48 hour period he remained in the general population, he has not plausibly alleged that he was deprived of a protected liberty interest.

Even if the failure to get Plaintiff into protective custody immediately did implicate a protected liberty interest, Plaintiff has failed to plead a sufficient nexus between Defendant's defamation and any resulting deprivation of a liberty interest, so as to allege a stigma plus claim. In *Smith v. Coughlin*, 727 F. Supp. 834, 841 (S.D.N.Y. 1989), the plaintiff claimed defendant prison officials had disseminated rumors about him that created a risk of harm by fellow inmates and required his removal to the secure housing unit, depriving him of his liberty interest in his prison job. The court found that there was an insufficient nexus between the dissemination of rumors and any subsequent deprivation of a liberty interest that would satisfy the "plus" requirement. *Id.* Here there is no clear nexus between any defamatory statements allegedly made by Lis-Johnson and any delay in Plaintiff's removal to protective custody.

Finally, as discussed above, NYCDOC's failure to get Plaintiff transferred to protective custody for two days following the dissemination of the *Post* article – a period during which he alleges suffering not the slightest injury at the hands of anyone – does not rise to the level of an Eighth Amendment violation.

Plaintiff has thus not pleaded facts tending to show that any false statement allegedly made by Lis-Johnson had a "causal connection to a state-imposed burden, such as a deprivation of liberty," that would allow him to bring a Section 1983 suit. *Westley v. Burdo*, 2018 WL 6703564, at *5 (N.D.N.Y. Dec. 20, 2018).

In addition, Plaintiff alleges certain injuries caused by the reprinting of the erroneous statement in the NYCDOC database by the *New York Post* and other publications. Specifically, he claims that the public reporting on the false accusation caused a loss of reputation to his

church and its members, the loss of relationships with members of his family, and the loss of his

personal belongings (because "public housing unit administrators believed, based on the libelous

report, that Mr. Aniades would never be released from prison[,] threw away or destroyed his

belongings."). However, even if these injuries can be tenuously connected to the original sin of

Lis-Johnson's allegedly defamatory statement (which, as far as I can discern, was not defamatory

at all, since she appears only to have reported a parole violation), they are not state-imposed

deprivations of liberty or property interests that satisfy the "plus" element of a stigma plus claim.

The loss of reputation to Plaintiff's church and loss of relationships with his family

members are the direct effects of defamation, not state-imposed deprivations of a liberty interest,

and so cannot support a stigma plus claim. Injury to reputation is not by itself a deprivation of a

liberty interest, so the direct "deleterious effect[s]" of defamation are similarly not deprivations

of a liberty interest. *Valmonte*, 18 F.3d at 1001. Such effects include "the impact that defamation

might have on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or

any other typical consequence of a bad reputation." *Id.* The harms to Plaintiff's relationships and

to his church are nothing more than the "normal repercussions of [Plaintiff's] poor reputation"

and do not support a cause of action for the deprivation of a liberty interest. *Id.*

The loss of Plaintiff's personal property also does not give rise to a claim cognizable in

federal court. Notably, Plaintiff does not say he was evicted; he says only that his belongings

were "thrown away" because public housing administrators believed that he would never be

released from prison (a claim that is in and of itself highly implausible). Even assuming that the

aforementioned "public housing administrators" were state actors or private actors operating

under state authority,[8] his claim for deprivation of personal property by state actors is not cognizable in federal court if the state courts provide an adequate remedy. *Herbin v. City of New York*, 2023 WL 2368974, at *3 (S.D.N.Y. Mar. 6, 2023) (*citing Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). Courts in this circuit have repeatedly found that the availability of an action in the Court of Claims and state law actions for negligence, replevin, or conversion are adequate post-deprivation remedies for a deprivation of personal property claim. *Id.* (collecting cases); *see also Jones v. Harris*, 665 F. Supp. 2d 384, 401 (S.D.N.Y. 2009). Since Plaintiff fails to allege that his available state remedies are in any way inadequate or inappropriate, *Butler v. Castro*, 896 F.2d 698, 700–04 (2d Cir. 1990), he cannot assert a claim for damages against Lis-Johnson in federal court for deprivation of his personal belongings.

Finally, any underlying claim against Lis-Johnson for defamation under state law is time-barred. In New York, a defamation claim must be brought within one year. N.Y. C.P.L.R. § 215(3). New York's single publication rule is that "a defamation claim accrues at publication, defined as 'the earliest date on which the work was placed on sale or became generally available to the public.'" *Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003) (quoting *Tomasino v. William Morrow & Co.*, 174 A.D.2d 734, 571 N.Y.S.2d 571, 572 (2d Dep't 1991)). Since "the single publication rule applies to Internet publishing," *id.*, the continuing availability of any alleged defamatory statement does not toll the statute of limitations. *Firth v. State*, 98 N.Y.2d 365, 370, 775 N.E.2d 463, 466 (2002); *see also Rinaldi v. Viking Penguin, Inc.*, 52 N.Y.2d 422, 434–35 (1981). Assuming the claim accrued on September 1, 2019 (the date Plaintiff avers the false statements were published to the database), and even with the benefit of

---

[8] Plaintiff does not say whether these were NYCHA officials (i.e., city officials) or private landlords that participate in the public housing system.

Governor Cuomo's 228-day COVID toll, his defamation claim expired on April 17, 2021 —
nearly 3 months before he filed his complaint. If the claim accrued on September 7, 2019, the
date the *Post* is alleged to have republished it, it is still time-barred.

Accordingly, Plaintiff's claim against Lis-Johnson is dismissed with prejudice.

### III.   Because Plaintiff Cannot Amend His Complaint to Add the Names of the John Doe Defendants, the Claims Against Them Are Dismissed Sua Sponte

There remains the issue of the John Doe Defendants. Plaintiff, who has already amended his
complaint once as of right per Fed. R. Civ. P. 15(a)(1), has not asked for leave to replead if any
of his claims are dismissed and has not sought leave to amend his Complaint to name any of the
John Doe Defendants, none of whom has been identified or served.  But since any motion for
leave to amend to name the John Does would be denied as futile, the court will forestall further
motion practice and *sua sponte* dismiss the John Doe claims with prejudice, on the ground that
they are time-barred.

While "The court should freely give leave [to amend] when justice so requires," courts
can deny leave to amend when amendment would be futile. *Jones v. N.Y. State Div. of Mil. &
Naval Affs.*, 166 F.3d 45, 50 (2d Cir. 1999). "Futility is a determination, as a matter of law, that
proposed amendments would fail to cure prior deficiencies or to state a claim under Rule
12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc' ns,
Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

Generally, "'John Doe' pleadings cannot be used to circumvent statutes of limitations
because replacing a 'John Doe' with a named party in effect constitutes a change in the party
sued." *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993) (internal citations omitted).
Failure to identify and serve John Doe defendants within the statute of limitations is fatal to

claims against them. *See Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468–70 (2d Cir. 1995). As a matter of law, the claims against the John Doe Defendants in this case are time-barred. As noted, *supra* p. 7 n.4, the statute of limitations on those claims – even with the benefit of the extra 228 days allowed due to the COVID toll – expired on April 25, 2023.

The court recognizes that a plaintiff may be able to substitute a named party for a John Doe defendant after the expiration of the statute of limitations in accordance with New York Civil Practice Law and Rules ("CLPR") § 1024, but only if the plaintiff satisfies the two requirements announced by the Second Circuit in *Hogan v. Fisher,* 738 F.3d 509, 518–19 (2d Cir. 2013). Those requirements are: that the plaintiff have exercised due diligence before the expiration of the statute of limitations to identify the John Doe sought to be added; and that the complaint must describe the John Does in a way that fairly apprises the correct individuals that they are the intended defendants.

Neither requirement is satisfied here. Nothing in the complaint gives the slightest indication who the John Doe defendants might be; they could be any Correction Officers at Rikers Island. This contrasts with the situation in a case recently decided by this court, *Williams v. Vaccaro*, 2023 WL 3741981 (S.D.N.Y. May 31, 2023), where the unnamed police officer John Does were identifiable because the complaint said they were the two ESU officers who transported Mr. Williams from the 33rd precinct to the hospital on the evening of January 13, 2018.

As for the first factor, Plaintiff's counsel has exercised NO DILIGENCE WHATEVER in ascertaining, prior to the expiration of the statute of limitation, who the John Doe defendants in this case might be. To the court's knowledge, counsel has not served the City with any discovery demands, sought disclosures pursuant to the Freedom of Information Law ("FOIL"),

or moved for the entry of a *Valentin* order.[9] Plaintiff's counsel has apparently done nothing at all
to figure out which correction officers at Rikers accessed and altered the database on or about
September 1, 2019,  to erroneously indicate that Plaintiff was being held on an attempted rape
charge rather than for a minor parole violation. Nor has he done anything to try to figure out
which officers were involved determining his custodial status between September 7, 2019, when
the *Post* article came out, and September 9, when he was transferred into protective custody at
the MDC.

Because I am raising this issue sua sponte, and because discovery demands do not have to
be filed on the docket of the case, before I dismiss the claims against the John Doe Defendants
with prejudice for failure to satisfy the *Hogan* factors, I will give Plaintiff until July 21 – and not
one second longer – to explain what steps he took prior to April 25, 2023 to ascertain the identity
of the John Does. It will not be sufficient for counsel to aver that there has not yet been an initial
Rule 16 pre-trial conference, because Plaintiff did not show up for the one scheduled by the court
on September 30, 2021 (at a time when, due to counsel's negligence, no defendant had yet been
served) and Plaintiff has not asked the court to schedule such a conference in the intervening 21
months.

---

[9] Pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) a district court may issue an order
compelling an agency defendant to identify John Doe defendants based on information provided
by the plaintiff (a "*Valentin* Order"). The Second Circuit, recognizing the informational
asymmetry between a civil rights plaintiff and the government, held that in such cases "discovery
may be necessary before a defendant may be fully identified." *Valentin*, 121 F.3d at 75

**CONCLUSION**

For the reasons discussed above, the motion to dismiss Plaintiff's claims against

Defendant DOCCS and Defendant Lis-Johnson is GRANTED. This constitutes the decision and

order of the court. It is a written opinion.

The clerk is respectfully directed to terminate the motions at Docket Numbers 24, 41, and

51. The clerk is further directed to dismiss the complaint as to Defendant DOCCS and Defendant

Lis-Johnson.


Dated: July 10, 2023

New York, New York


_____

U.S.D.J.

BY ECF TO ALL COUNSEL